James E. Kennedy vs. The Delaware Cotton Company, a corporation existing under the laws of the State of Delaware.

*Pleading—Demurrer—Action by Father for Damages Accruing from Death of Son—Common Law—No right of Action.*

An action cannot be maintained in this State by a father for damages accruing to him by reason of the death of his son, and the consequent loss of services.

(*December 14, 1903.*)

Lore, C. J., and Spruance and Boyce, J. J., sitting.

*Levin F. Melson* and *Franklin Brockson* for plaintiff.

*William S. Hilles* for defendant.

Superior Court, New Castle County, November Term, 1903.

Action on the Case (No. 56, February Term, 1902).

Demurrer.

This was an action brought by James E. Kennedy, the father of James Lea Kennedy, deceased, a minor, to recover damages for the loss of services of said minor and for expenses to which said father had been put by reason of the instantaneous killing on October 25, 1901, of his said son, who was employed by the defendant and whose death was alleged to have been due to the negligence of the defendant.

On July 1, 1903, an amended declaration was filed, consisting of five counts, beginning as follows:

"And also for that Whereas, heretofore, to wit, at the time of the committing of the grievances hereinafter mentioned, the said The Delaware Cotton Company, the defendant above named, was, and still is, a corporation existing under the laws of the State of Delaware, in control of and operating a certain factory, at the City

of Wilmington, in the county of New Castle aforesaid, and the said plaintiff's son James Lea Kennedy, was then and there a minor, hired and employed by the said defendant to work for it in its said factory. And the said plaintiff avers that heretofore, to wit, on the twenty-fifth day of October A. D., 1901, at New Castle County aforesaid, the said defendant negligently and carelessly permitted the belt of a certain calender in its said factory to be and remain out of order and repair and that the said James Lea Kennedy, who was then and there engaged in his occupation as aforesaid and at work at or upon the said calender in the exercise of due care and caution on his part, was, by reason of the belt of said calender so being out of order and repair as aforesaid, caught by and between the belt, pulleys, frame and shafting of said calender, and thereby greatly injured, and the head of the said James Lea Kennedy, was thereby crushed and mangled, and he the said James Lea Kennedy was by means of the premises, by and through the aforesaid negligence and carelessness of the said defendant, instantly killed, to wit, the day and year aforesaid, at New Castle County aforesaid; that at the time said injuries were received, as aforesaid, by the said James Lea Kennedy, he lived with, and contributed his weekly earnings to his father, the said plaintiff, that by reason of said injuries so received as aforesaid by the said James Lea Kennedy, the said plaintiff was put to great personal expense, and was compelled to, and did lay out and expend large sums of money ; that by reason of the said injuries so received as aforesaid, by the said James Lea Kennedy, the said plaintiff has been deprived of the value of the services of the said James Lea Kennedy since the date of his said injuries and death and will be deprived of his said services and the value thereof until he the said James Lea Kennedy would have attained the age of twenty-one years, to wit, for the space of seven years, to wit, at New Castle County, aforesaid. Wherefore, by reason of the premises, the said plaintiff saith that he is injured and hath sustained damage to the amount of Seven Thousand Dollars, and therefore he brings his suit."

The other counts were similar to the above.

The defendant demurred generally to the above declaration.

*William S. Hilles for defendant:*

This action is brought by James E. Kennedy, as the father of James Lea Kennedy, to recover damages for loss suffered by him, including loss of services, expense to which the plaintiff was put, etc.

The first, second, third and seventh counts charge that, by reason of the negligence of the defendant, the son was caught in certain machinery and instantly killed.

The fourth, fifth and sixth counts charge that the son was so badly hurt that he died therefrom on the same day.

The question raised by the demurrer is whether a father can maintain any action for damages accruing to him by reason of the death of his son, and the consequent loss of services, etc. It is respectfully submitted that no such action can be maintained in this State.

The English law on this subject commenced with the case of *Higgins vs. Butcher, 2d Rolle's Abridgment, 575,* where the plaintiff brought an action against the defendant for beating his wife, whereof she died, etc. The Court held that the action could not be maintained. TANFIELD, Judge, saying "If a man beats the servant of J. S. so that he dies of the battery, the master shall not have an action against the other for the battery and loss of service, because the servant dying of the extremity of the battery, it is now

become an offense of the Crown, being converted into felony, and that drowns the particular offense and private wrong offered to the master before, and his action is therefore lost. Quad, Fenner and Yelverton, *concesserunt.*"

This case was decided in 1606, and the question does not seem to have arisen again in England until 1808, when the case of *Baker vs. Bolton, 1 Campbell, 493*, was decided. This was an action by a husband for the loss of comfort, fellowship and assistance of his wife, killed by the negligent overturning of a stage-coach; and in this case Lord Ellenborough laid down the celebrated proposition that "in a civil court the death of a human being could not be complained of as an injury."

In *Osborn vs. Gillett, L. R. 8 Ex., 88*, decided in 1873, the plaintiff brought an action for the loss of services of his daughter, who was run over by the wagon of the defendant, was thereby wounded and injured, and by reason thereof afterwards died, and also was put to expense for her burial, etc. There were two pleas, the first of which was that the daughter was killed upon the spot. The case was argued before Kelley, Pigott and Bramwell, and the plea was held good by a majority of the Judges, and it is interesting to note that the cases cited by the Court are *Baker vs. Bolton,* and the two American cases of *Eden vs. Railway Company, 14 B. Monroe, 204,* and *Carey vs. Railway Company, 1 Cushing, 475.*

*Seward vs. Vera Cruz, 10 App. Cas., 59, 66, 70.*

The law in England was changed by *Lord Campbell's Act, 9th and 10th Victoria, Chapter 93,* the recital of which Act recognizes the common law of England at the time of its passage, and is as follows:

"Whereas no action at law is now maintainable against a person, who by his wrongful act, neglect or default may have caused the death of another person, and it is oftentimes right and expedient that the wrong-doer in such cases shall be answerable in damages for the injury so caused by him."

This was the law in England, and the American law, with the exception of a very few cases, has adopted the same rule.

The earliest case in this country was that of *Carey vs. Railroad Company* and *Skinner vs. Railroad Company*, considered together by the Supreme Court of Massachusetts in 1848, *1 Cushing, 475*. The first of these was an action by a wife to recover damages for the death of her husband, and the second was an action to recover for the loss of service of a son killed in a railroad accident. METCALF, Judge, deciding the case, holds that neither action will lie. See also the following cases :

*Sullivan vs. Union Pacific Railroad Co., 2 Fed., 447 ; Cramer vs. Railroad Company, 25 California, 435 ; Nickerson vs. Harriman, 38 Maine, 277 ; Scheffler vs. Railroad Co., 32 Minn., 125 ; Sherman vs. Johnson, 58 Vermont, 40 ; Davis vs. Railroad Co., 13 Southwestern, 801 ; Insurance Company vs. Brame, 95 U. S., 754 ; The Harrisburgh, 119 U. S., 199 ; Hyatt vs. Adams, 16 Mich., 180 ; Green vs. Railroad Co., 2 Keys, N. Y., 294.*

The cases in America seemingly holding a contrary doctrine are :

*Cross vs. Guthery, 2 Root, 90 ; Ford vs. Monroe, 20 Wendell, 210 ; James vs. Christy, 18 Mo., 162 ; Sullivan vs. Union Pacific Railroad Co., 3 Dillon, 334.*

Of these cases, *Cross vs. Guthery* cannot be reconciled with the later case of *Goodsell vs. Railroad Co., 33 Conn., 55.*

*Ford vs. Monroe* was distinctly overruled by the Court of Appeals in *Green vs. Railroad, 2 Keys, 294 ;* and *Sullivan vs. Union Pacific Railroad* was overruled by *Insurance Company vs. Brame, 95 U. S., 754.*

In Missouri (*James vs. Christy,*) and Georgia (*Shields vs. Young, 15 Ga., 349*), the law is otherwise.

For a comment on the American cases, see the opinion of the Supreme Court in *The Harrisburgh, page 204, supra.*

See also the cases cited in *9 Rose's Notes, p. 350.*

The law in Delaware follows the common law.   In *Szymanski*

*vs. Blumenthal, 3 Pennewill, 558,* GRUBB, J., speaking for the Court, says:

"In respect to the statute now under consideration it must be remembered that, prior to the enactment of Lord Campbell's Act of 1846, it was a recognized maxim of the common law in England, and subsequently in this country, that no action at law was maintainable against a person who by his wrongful act, neglect or default may have caused the death of any person.

"This doctrine was first judicially declared in England by Lord Ellenborough, in 1808, in *Baker vs. Bolton, 1 Campbell, 493,* wherein he announced the proposition that "in a civil court the death of a human being could not be complained of as an injury."

"Hence compensation in damages was not recoverable for either the injury to the deceased, or the loss resulting from his death to those who were permanently deprived of his society, protection or support.

"But so unsatisfactory—if not irrational—were the reasons given for this alleged common law rule, and so objectionable were the hardships and injustice of its operation, that relief was afforded by Lord Campbell's Act, which conferred a right of action for the benefit of the wife, husband, parent and child of the person whose death shall have been wrongfully caused by another."

The text books, English and American, are a unit in announcing this to be the law.

The whole subject is ably and thoroughly considered, and nearly all of the cases cited in *Tiffany Death by Wrongful Act, Sections 1 to 17* inclusive.

*Pollock on Torts, 54; 2 Thompson on Negligence, 1272 to 1274; Cooley on Torts, 15, 26 to 29, 262.*

In *1 Shearman and Redfield on Negligence, Section 124,* the law is stated as follows:

" No COMMON LAW REMEDY FOR INJURIES CAUSING DEATH.—The common law allowed of no remedy, by way of a civil action, for an injury causing the death of a human being. Such injury must

necessarily precede death; and the law did not allow any cause of action for an injury to the person to survive him. The husband or master of the deceased was not allowed to sue, because the only damage recognized by the law was the loss of service during the lifetime of the servant; and the death of the servant, therefore, worked no injury to the master of which the law could take notice. And, if the act causing death amounted to a felony, the general rule of the common law, forbidding any civil suit upon a felony, would alone have sufficed to exclude a claim for damages. Whatever may be said of these arguments, the conclusions thus reached formed a settled doctrine of the common law. No one, whether as executor, master, parent, husband, wife or child, or in any other right or capacity, could maintain an action for damages on account of the death of a human being."

Such being the common law, the statute of 1866 was passed, which was amended by *Chapter 210, Volume 22, Laws of Delaware,* so that Section 2 of this statute now reads as follows :

"Whenever death shall be occasioned by unlawful violence or negligence, and no suit be brought by the party injured to recover damages during his or her life, the widow or widower of any such deceased person, or if there be no widow or widower, the personal representatives may maintain an action for and recover damages for the death and loss thus occasioned."

This statute gives no right of action to the parent for the loss of services, or other injury which he may sustain by the death of his son; and the remedy being statutory can only be invoked to the extent and by the persons named.

It is therefore submitted, as this action is brought to recover for the loss of services between the date of the death of the son and his reaching his majority, that the demurrer must be sustained.

### PLAINTIFF'S BRIEF AGAINST THE DEMURRER.

In this case the objection cannot be raised that the plaintiff is seeking by two different actions to recover damages for the same

injury. The Court having ruled in February, 1903, that the action by the personal representative abated, the plaintiff now endeavors to obtain redress for the damages he sustained individually by reason of the injuries to his son.

The declaration in this case alleges a special and direct damage to the father as follows: "That by reason of *said injuries* so received as aforesaid by the said James Lea Kennedy the plaintiff was put to great personal expense, and was compelled to, and did, lay out and expend large sums of money":—For this he is entitled to recover.

In this State the father may sue for an injury to his son.

*Hammer vs. Pierce, 5 Harr., 171 (1849).*

The father is legally entitled to his child's services and may sue for the loss of them. "And the performance of ordinary duties, *however slight,* will be sufficient evidence to ground a claim for loss of services."

*Robinson vs. Burton, 5 Harr., 335 (1851).*

The right of the father to the services of his son is a legal right recognized by the common law, as well as by the law of Delaware. It is submitted that the doctrine that "A personal action dies with the person" does not extinguish that legal right.

1. The rule rests upon the fiction that the civil injury is merged into the felony.

2. The case of *Baker vs. Bolton,* decided in 1808, is the basis of the alleged rule.

(a) A rule charactized by one Court which adopted it, as resting "more on artificial distinction than any real principle, and savors more of the logic of the school men than of *common sense.*

*Hale Dam., 299.*

(b) Criticized in this State as follows:—"But so unsatisfactory, if not *irrational,* were the reasons given for this *alleged* common law rule * * *"

*Syzmanski vs. Blumenthal & Co., 3 Penn'l., 558.*

3. The act averred against the defendant is not a felony.

4. Nor is the rule of merger in force here.

This case at bar is not an action for the death of the son. The father sues for his individual damage caused by the injuries received by the son through the act of the defendant.

The following cases hold that the father may recover for loss of services of his son, even though the tort complained of resulted in son's instant death:

*Cross vs. Guthery, 2 Root 90 (1794); Ford vs. Monroe, 20 Wend., 210 (1838); Cuthing vs. Seabury, 1 Spr. (Dist. Mass.) 522 (1860); Sullivan vs. Union Pacific R., 3 Dill (U. S. C. C.) 334 (1874); James vs. Christy, 18 Mo., 162.*

The son having been injured by the defendant, two distinct causes of action arose,

1.   One action accrued to the son for the injury to himself, which might have been prosecuted by his next friend or guardian, had he lived.

2.   The other action accrued to the father for loss of services, and expenses caused by his son's injuries.

These actions are totally distinct and separate, and although the distinction was clearly overlooked in those cases which adopt the rule in *Baker vs. Bolton,* it has nevertheless been forcibly stated by learned authority.

*Pollock on Torts; Sullivan vs. Union Pacific R. R., 3 Dill. 334 (1874).*

This distinction was recognized by the Superior Court of this State in this language:   "These by the record are two *distinct suits* and are already brought.   They are *in a different right absolutely ;* one as administrator and the other personally."

*Wilcox vs. W. C. Ry. Co., 1 Penn'l, 246 (1898).*   Even if the rule in *Baker vs. Bolton* were a reasonable one, and one founded on a line of well considered cases, this Court is under no obligation to adopt the rule in this State where the matter is still an open question.

1. Because, we are bound by such parts only of the common

law and its statutory affinities as concern our condition and cir-cumstances.

*State vs. Williams, 9 Houst, 508, 527.*

2. The common law of England is in force in this State only so far as it has been adopted in practice.

*Starr & Co. vs. Lewis, 3 Harr. 40, 41( Note a).*

3, And this is particularly true in view of the fact that the rule contended for by the defendant was annunciated in England in 1808 ; more than thirty years after Delaware was formed an independent State.

*Hully vs. Sec. Tr. Co., 5 Del, Ch., 578.*

There can be no common law of the United States. When a common law right is asserted, we look to the State in which the controversy originated. Judicial *Decisions* of *the State must deter-mine* how far the *common law* has been introduced in each State.

*Wheaton & Donaldson vs. Peters & Grigg, 8 Peters (U. S.) 658 (1834) ; Clawson vs. Primrose, 4 Del. Ch., 673 ; Syzmanski vs. Blumenthal & Co., 3 Penn'l, 558.*

LORE, C. J. :—The Court think that under the overwhelming weight of authority this demurrer must be sustained. What judg-ment will you take ?

*Mr. Melson :*—We will take a judgment of *respondeat ouster.*

LORE, C. J. :—Let judgment of *respondeat ouster* be entered.